## CONNOR *against* BRADEY.

In an action on a promissory note, a witness, who is the real plaintiff in interest, may be called and examined by the defendants.

A witness how far bound to answer a question which may subject him to a civil injury.

THIS was an action on a promissory note, made by the defendant in favor of Winship, and by him indorsed to the plaintiff.

The defence, set up by the defendant, was that the consideration of the note was usurious. To prove the usury, the defendant called Dr. Lord as a witness. The plaintiff's counsel objected to his being sworn, and alleged that he was the real plaintiff in the suit. The defendant's counsel contended that this interest would operate in favor of the plaintiff and against the defendant, and that, therefore, the defendant had a right to waive the objection.

The court allowed the witness to be sworn.

The defendant then attempted to prove the usury by the witness. He stated, however, that he had been interested and concerned in the contract from the beginning, and if there was any usury in the transaction, his answers would criminate himself.

The defendant's counsel contended that a witness is bound to answer a question, although such answer may subject him to a civil injury, and is only privileged where the answer may subject him to a criminal prosecution; and, in

support of this position, he relied upon the case of Lord
Melville in the House of Lords.

VAN NESS, J.   I understand the rule alluded to, (which
was brought under consideration on Lord Melville's witness
indemnity bill,) differently from the defendant's counsel.
The rule, however, does not govern this case.   Here, the
witness having declared that he was interested and con-
cerned in the contract from the beginning, he has a right
to decline answering all questions relating to the alleged
usury.(1)

*Griffin,* for the plaintiff.

*Emmet,* for the defendant.

(1) The witness in this case, was protected from answering, relative to the
usury charged, on the ground that his answers might subject him to a crimi-
nal prosecution.    At the common law, usury is an indictable offence.    The
only doubt, in the books on this head, seems to be whether all usury was
indictable, or only Jewish usury.  Ord. p. 3;  2 Chitty Crim. Law, 548.  Hale,
chief baron, in an anonymous case, (Hard. 420,) says: "Jewish usury was
prohibited at common law, being forty pound per cent. and more, but no
other."  And Lee, C. J., (in Palm. 292,) says, that the usury condemned at
the common law, was the common trade of biting usury, such as was that
of the Jews.   Mr. Chitty, in commenting on this subject, (2 Chitty Crim. Law,
p. 549,) observes, that a very eminent barrister, in A. D. 1814, advised that
in a case of clear and palpable usury, a party may be indicted at common
law.   Our statute, prohibiting usury, differs essentially, in its prohibitory pro-
visions, from the English statutes.   By our statutes, the excess only can be
recovered back, and there is no penalty expressly imposed on the party taking
usury.   The English statutes, however, over and above the provisions invali-
dating the contract, which are copied into our statutes, contain very heavy
forfeitures and penalties, so that the party, to the usury, could never be com-
pelled to testify, according to the English law; but, by our law, he can be
protected only on the ground of his liability to an indictment at common law,
as above stated.

In the case of Lord Melville's witness indemnity bill, the question, stated

Connor v. Bradey.

to the judges for their opinion, was, "whether witnesses were bound to answer questions, if their answers subjected them to civil process." 1 Am. Law Journal, 223.

Mr. Baron Graham, Mr. Justice Chambre, Mr. Justice Le Blanc, Mr. Justice Lawrence, Mr. Justice Heath, the Lord Chief Baron, the Lord Chancellor and Lord Ellenborough, were decidedly of opinion, that the general rule of law was, that a witness was bound to answer every question, touching the issue to be tried, with the exception only of such questions as would expose him to a criminal prosecution, or to a penalty or forfeiture. Mr. Justice Grose, Mr. Justice Rooke, Mr. Baron Thompson and Sir James Mansfield, Chief Justice of the Common Pleas, were of a different opinion, and thought that no third person had a right to extort from a witness, what debts he owed, or what slander he might have uttered, which would expose him to actions: and, to show the possible hardship of the rule, Mr. Justice Rooke mentioned the case of Lord Keith, who, by an answer he gave in an insurance case where he was called as a witness, subjected himself to an action in which ten thousand pounds damages were given against him. The Lord Chancellor, in the progress of this deliberation, observed, that he considered the practice so far precise, clear and perspicuous; that it was necessary no new law should be promulgated, otherwise than in the form of a declaratory law, by which it should be announced what had been the law, what was the law, and what ought to be the law of the land, as to this important particular. Such a law seems, afterwards, to have been passed, (46 Geo. 3d c. 37,) by which it is declared that a witness cannot, by law, refuse to answer a question relevant to the matter in issue, (the answer of which has no tendency to accuse himself, or to expose him to penalty or forfeiture of any nature whatsoever,) on the ground that the answering of such question may establish, or tend to establish, that he owes a debt, or is otherwise subject to a civil suit. Phillips on Evidence, 203.

Statutes have been passed in the state of New York, since the preceeding remarks were written, by which all protection is taken from the person receiving usury. He is now compelled to testify. To bring this coercion, however, within the rule of the common law, *nemo tenetur seipsum accusare*, it is expressly declared, in the same statute, that the testimony so given shall *not be used against such person before any grand jury, or on the trial of any indictment against him.* 2 R. S. 58, 3d ed. This seems quite just on its face, but whether it can be entirely so, practically, is not quite so certain. If the rule of the common law is just and right, it would seem the sounder policy to create no exceptions to it by statutes.